Parker, C. J.
The only question, exhibited by the report of the judge who sat in the trial of this cause, is, his direction to the jury upon the facts proved was right in law.
The objection to that direction is, that by the bill of lading the master of the vessel had undertaken to deliver the goods [*569] * to the plaintiff in Salem, unless the dangers of the seas, the laws of the country, or other unavoidable accident prevented ; and that there "was nothing in the plaintiff’s orders, which •released the master from that contract.
The orders must be considered as existing in the letter of the plaintiff, and in those of Mr. Francis and Mr. Wiggleworth to Captain Heard, the plaintiff’s letter referring Heard directly to such instructions as he should receive from those two gentlemen. If, therefore, a general discretion, or a discretion broad enough to cover the conduct of Mr. Heard, can be found in either of the letters referred to, he must be considered as having acted under the authority of the plaintiff himself.
The instructions of Mr. fVigglesivorth cannot, without a nicety which ought not to be admitted into the construction of mercantile contracts, be viewed in any other light than as giving a full and unlimited discretion to use his own judgment in the disposition of the property, according to the circumstances which might arise ; and under such authority nothing short of gross negligence or fraud would render a master liable in case of any misfortune.
The orders of Mr. Francis are more limited ; they being capable, without violence, of being construed into a direction to sell only in some other country, provided the vessel could not return to the United States. But even under these last orders, if the vessel could not return without imminent hazard, and the goods could not be sold abroad, it is questionable whether the master could be made liable for leaving them in a neutral country, if that should have been thought the safest and most discreet course at the time.
But, however that may be, he had a right, if circumstances of necessity or prudence would justify him, to adopt and follow those instructions which were most conformable to the situation in which he found himself placed; and was not left without any liberty to depart from the strict letter of the bill of lading ; as has been [*570] supposed by the plaintiff’s * counsel; because the plaintiff had given him inconsistent or contradictory orders.
It is very probable that the unlimited authority given by MrWigglesworth was caused by the peculiar state of the country at the time, and an apprehension that, on the return of the vessel, the importation of her cargo from Calcutta would "be unlawful But we *493 think that the new and unexpected perils arising from the war, which was first heard of in Pernambuco, justified the master in acting under those orders, with respect to those perils. The case shows that the vessel was in imminent danger of capture ; and the lightening of her, by taking out a part of her cargo, was probably a principal cause of her safe voyage home ; crowded as our coast then was with enemy’s cruisers. The proportion of the plaintiff’s goods left behind, being equal to that of the master’s, his father’s, Mr. Francis’s, and Mr. Wigglesworth’s, it is very clear that no prejudice was intended to the plaintiff; and indeed the presumption is very violent, that, had the plaintiff himself been in the vessel, he would have conducted as the master did ; unless he had made full insurance upon his goods, which was the case with the defendant, who on that account directed his goods to be brought home in the vessel.
On the whole, we think that the master, for whose supposed misconduct the owner is sued, has not only justified himself by the orders under which he sailed ; but that his conduct was that of a faithful, discreet, and prudent agent, regardful of the interest of those for whom he was employed. Judgment must, therefore, be entered upon the verdict.†

 Quære, Whether the bill of lading could be controlled by instructions of a prior .date.